1 | Joseph G. Dicks, SBN 127362
Linda G. Workman, SBN 128621
2 | **DICKS & WORKMAN, APC**
750 B Street, Suite 2720
3 | San Diego, California 92101
Telephone: 619.685.6800
4 | Facsimile: 619.557.2735
Email: jdicks@dicks-workmanlaw.com
5
Attorneys for Plaintiff and the Class
6

F I L E D

08 FEB 27

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

7

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT OF CALIFORNIA**

10 | PHILIP MARTINET, individually and on behalf of all others similarly situated,

CASE NO.

**'08 CV 3 8 1    JLS (LSP)**

11 | Plaintiffs,

**CLASS ACTION COMPLAINT**

12 | v.

**Jury Trial Demanded**

13 | T-MOBILE USA, INC., a Delaware corporation,

14

15 | Defendant.

16

Plaintiff Philip Martinet (hereinafter "Plaintiff" or "Martinet"), by and through his attorneys, makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to those allegations specifically pertaining to Plaintiff and his counsel, which are based on personal knowledge.

I.    NATURE OF THE ACTION

1.    This is a class action brought on behalf of subscribers of T-Mobile USA, Inc. (hereinafter "T-Mobile" or "Defendant") wireless service based on T-Mobile's unlawful business and billing practices. Since at least November 2007, T-Mobile has charged its existing subscribers an "upgrade fee" of $18 when its existing subscribers obtain new wireless phones and handsets. The fee is (i) not disclosed by T-Mobile's sales representatives at the time the subscribers obtain new phones or handsets; (ii) not charged at the time of the sale; (iii) appears as a line item charge on the customer's next T-Mobile invoice. In addition, the fee is neither referenced in the contracts

CLASS ACTION COMPLAINT                    1

1 between T-Mobile and its existing subscribers nor contained in the general terms and conditions

2 pertaining to T-Mobile service as those terms and conditions were and are disclosed and made

3 available on the T-Mobile website. Plaintiff hereby asserts claims for breach of contract and breach

4 of implied covenant of good faith and fair dealing, unjust enrichment/common law restitution, and

5 violations of various states' unfair and deceptive acts and practices statutes.

## II.    JURISDICTION AND VENUE

7    2.    This court has jurisdiction pursuant to 28 U.S.C. §1332(d). This is a class action

8 involving more than 100 class members, and a member of the Plaintiffs' Class is a citizen of a state

9 different from defendant. Moreover, the amount in controversy, in the aggregate, exceeds the sum

10 of $5,000,000, exclusive of interest and costs.

11    3.    Defendant is duly registered to transact and transacts business in this District, thus

12 making Defendant subject to personal jurisdiction in this District. Furthermore, a substantial part of

13 the events or omissions giving rise to these claims occurred in this District. Accordingly, venue is

14 proper in this District under 28 U.S.C. §1391(a)(2).

## III.    PARTIES

16    4.    Defendant T-Mobile is a Delaware corporation with its principal place of business in

17 Bellevue, Washington. T-Mobile is duly registered to conduct and conducts business throughout

18 the United States, including, but not limited to, California, and in counties throughout California,

19 including, but not limited to, San Diego County.

20    5.    Plaintiff Philip Martinet is an individual and a resident of San Diego County,

21 California.

## IV.    FACTUAL ALLEGATIONS

23    6.    T-Mobile is a provider of wireless telecommunications services throughout the

24 United States, including, but not limited to, California.

25    7.    Subscribers to T-Mobile service execute contracts with T-Mobile for the provision

26 of such services.

27    8.    In addition to written form contracts, T-Mobile purports to disclose the terms and

28 conditions applicable to its services and service agreements on its website: www.t-mobile.com.

---

CLASS ACTION COMPLAINT                    2

9.      T-Mobile revises its written form service contracts on a regular basis.

10.     On or about November 12, 2007, T-Mobile announced, albeit not in a manner that reached or was intended to reach existing T-Mobile subscribers, that it would begin charging an "upgrade fee" of $18 to existing T-Mobile subscribers that purchase new telephones and handsets.

11.     Prior to T-Mobile's November 12 enactment of the $18 "upgrade fee," existing subscriber contracts contained no language or rates for "upgrade fees" or other specific language or rates for one-time fees related to purchasing new telephones or handsets.

12.     Prior to T-Mobile's November 12 enactment of the $18 "upgrade fee," the terms and conditions of service listed on T-Mobile's website contained no language or rates for "upgrade fees" or other specific language or rates for one-time fees related to purchasing new telephones or handsets.

13.     Even after T-Mobile's November 12 enactment of the $18 "upgrade fee," the terms and conditions of service listed on T-Mobile's website contained no language or rates for "upgrade fees" or other specific language or rates for one-time fees related to purchasing new telephones or handsets.

14.     Plaintiff became a T-Mobile subscriber in or around December 2003. He has been, and remains at the time of the filing of this Complaint, a T-Mobile subscriber since December 2003.

15.     On or about November 20, 2007, Plaintiff purchased a new wireless handset from T-Mobile under his existing T-Mobile wireless account.

16.     When Plaintiff purchased his new handset, he was not told that he would be charged any one-time fee or fees beyond the cost of the phone, which was $239.99. Specifically, Plaintiff was not told he would be charged an "upgrade fee" of $18 for his phone purchase.

17.     Unhappy with the performance of his newly-purchased phone, Plaintiff returned the handset to T-Mobile and purchased a second handset in late November or early December 2007.

18.     When Plaintiff purchased his second new handset, he was not told that he would be charged any one-time fee or fees beyond the cost of the phone, which was $349.99. Specifically, Plaintiff was not told he would be charged an "upgrade fee" of $18 for his second phone purchase.

19.    At the time Plaintiff purchased his second new handset, he was still unaware that he would be charged or had been assessed an "upgrade fee" of $18 for the first new handset purchase from on or about November 20, 2007.

20.    After Plaintiff's purchase of the second new handset, he received an invoice from T-Mobile reflecting the first new handset purchase but not the second new handset purchase. A copy of the invoice is attached as Exhibit 1. The invoice reflected the price of the new handset - $239.99 – and an $18 line item charge for "upgrade fee."

21.    Plaintiff complained to T-Mobile customer service about the "upgrade fee" charge and was told that the charge was lawful, agreed to by him under his contract, and allowed pursuant to T-Mobile's terms and conditions as set forth on the T-Mobile website.

22.    A copy of the terms and conditions from T-Mobile's website from December 2007 contains no reference to an "upgrade fee" or other charge to existing subscribers purchasing new equipment from T-Mobile. A copy of the terms and conditions as listed on the T-Mobile website in December 2007 is attached hereto as Exhibit 2.

23.    T-Mobile refused to refund Plaintiff the $18 "upgrade fee."

24.    In late December 2007 or early January 2008, Plaintiff received an invoice from T-Mobile reflecting the second new handset purchase. A copy of the invoice is attached as Exhibit 3. The invoice reflected the price of the second new handset - $349.99 – and a line item charge for a second $18 "upgrade fee." The invoice contained no credit for the first "upgrade fee."

25.    Plaintiff again complained to T-Mobile customer service about the second "upgrade fee" charge and was told again that the charge was lawful, agreed to by him under his contract, and allowed pursuant to T-Mobile's terms and conditions as set forth on the T-Mobile website.

26.    T-Mobile refused to refund Plaintiff the second $18 "upgrade fee."

27.    To date, T-Mobile has refused to refund either of the $18 "upgrade fees" to Plaintiff on the basis that that the charge was (i) lawful, (ii) agreed to by Plaintiff under his contract, and (iii) allowed pursuant to T-Mobile's terms and conditions as set forth on the T-Mobile website.

28.    T-Mobile has inserted clauses into customer contracts (and in its general terms and conditions posted on its website) that purport to impose mandatory arbitration and a waiver of the

1  right to participate in class actions. However, these contracts are contracts of adhesion drafted

2  entirely by T-Mobile on a take-it-or-leave-it basis in a setting in which disputes between the

3  individual contracting parties predictably involve small amounts of damages. Plaintiff had neither

4  the bargaining power nor the ability to change the contractual terms. T-Mobile relies on the

5  mandatory arbitration and class action waiver provisions to shield itself against consumers' use of

6  the civil justice system and potentially high awards while depriving aggrieved customers of their

7  legal rights of access to justice to redress T-Mobile's misconduct. In practice, waiver virtually

8  immunizes T-Mobile from responsibility for its own wrongful conduct. Such waivers are

9  unconscionable under California and federal law and should not be enforced.

10      29.     As recently as January 22, 2008, the Ninth Circuit determined that T-Mobile's terms

11  and conditions purporting to compel arbitration and to waive class action rights are unenforceable.

12  *Lowden v. T-Mobile USA, Inc.*, No. 06-3535 (9th Cir. filed Jan. 22, 2008).

13      30.     In addition, the Ninth Circuit has previously determined that similar terms and

14  conditions for Cingular Wireless services purporting to compel arbitration and to waive class action

15  rights are unenforceable. *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976 (9th Cir.

16  2007).

17                    **V.    CLASS ACTION ALLEGATIONS**

18      31.     Plaintiff Martinet brings this action as a class action for equitable, injunctive and

19  declaratory relief as well as monetary relief pursuant to Rule 23 on behalf of the following Class:

20      **T-Mobile subscribers in the United States assessed an $18 "Upgrade Fee" for**

21                    **obtaining new wireless telephones and handsets (the "Class").**

22      32.     Plaintiff Martinet is a member of the Class.

23      33.     The members of the Class are readily ascertainable but are so numerous that joinder

24  is impracticable. The exact number and names of the members of the Class are presently unknown

25  to Plaintiff, but can be ascertained readily through appropriate discovery. Plaintiff believes there

26  are thousands of members of the Class, whose names and addresses may be readily discovered upon

27  examination of the records in the custody and control of T-Mobile.

28

34.    There are questions of law and fact common to the Class. Defendant pursued a common course of conduct toward the Class as alleged. This action arises out of a common nucleus of operative facts. Common questions include, but are not limited to:

a.    Whether T-Mobile breached its contracts with the members of the Class;

b.    Whether T-Mobile charged Class members fees in violation of the contracts between T-Mobile and the members of the Class; and

c.    Whether T-Mobile violated California Civil Code §§ 1750, *et seq.*, California Business and Professions Code §§ 17200, *et seq.*, and §§ 17500, *et seq.*, and similar consumer statutes in other states as herein alleged.

35.    The claims of Plaintiff are typical of the claims of the Class. Plaintiff suffered from T-Mobile's unlawful conduct and was harmed thereby.

36.    Plaintiff will fairly and adequately represent and protect the interests of the Class, and common issues of fact and law predominate.

37.    Plaintiff has retained counsel competent and experienced in prosecuting complex nationwide consumer class actions.

38.    Notice of this class action can be provided to Class members by techniques and forms similar to those customarily used in consumer class actions, such as by published notice, Internet notice, first class mail, or combinations thereof, and by other methods suitable to this Class.

39.    Class certification is appropriate because T-Mobile has acted, or refused to act, on grounds generally applicable to the Class, making class-wide equitable, injunctive, declaratory, and monetary relief appropriate. In addition, prosecution of separate actions by or against individual members of the Class would create a risk of incompatible standards of conduct for T-Mobile and inconsistent or varying adjudications for all parties. A class action is superior to other available methods for the fair and efficient adjudication of this action.

## COUNT I

**Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing**

40.    Plaintiff incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

41.    This Count I is brought on behalf of the Class.

42.    Plaintiff and each Class member was a party to a contract with T-Mobile under which T-Mobile agreed to provide wireless service to that Class member (hereinafter, "T-Mobile Contracts"). Although the T-Mobile Contracts were and are revised by T-Mobile from time to time, none of them contains language or rates for "upgrade fees" or other specific language or rates one-time fees related to purchasing new telephones or handsets.

43.    Every contract, including each of the T-Mobile Contracts, imposes upon each party an implied duty of good faith and fair dealing in its performance and enforcement.

44.    By charging its existing subscribers, Plaintiff, and the Class members, each of whom was subject to a contract with T-Mobile, an "upgrade fee" not disclosed prior to or during the sale of the new telephone or handset and not contained in the T-Mobile Contracts, T-Mobile breached its contracts with Plaintiff and the Class members and breached its duty of good faith and fair dealing to Plaintiff and the Class members.

45.    By charging its existing subscribers, Plaintiff, and the Class members an "upgrade fee" not disclosed prior to or during the sale of the new telephone or handset and not contained in the general terms and conditions available on T-Mobile's website, T-Mobile breached its contracts with Plaintiff and the Class members and breached its duty of good faith and fair dealing to Plaintiff and the Class members.

46.    As a result of such breaches by T-Mobile, Plaintiff and the Class members have suffered monetary damages in the form of such fees and charges described above.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## COUNT II

### Unjust Enrichment/Common Law Restitution

47.    Plaintiff incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

48.    This Count II is brought on behalf of the Class.

49.     Through the "upgrade fee" scheme described above, T-Mobile has charged Plaintiff and the Class members fees in violation of the contractual rights and in violation of statutory and common law.

50.     T-Mobile has reaped substantial profit from the unlawful imposition of the "upgrade fees." This has resulted in T-Mobile's wrongful receipt of profits and injury to Plaintiff and the Class members.

51.     As a direct and proximate result of T-Mobile's misconduct as set forth above, T-Mobile has been unjustly enriched.

WHEREFORE, Plaintiff and the Class members pray for relief as set forth below.

## COUNT III

**Violations of Unfair Competition, False Advertising, and Consumer Protection Laws, Including, But Not Limited to, California Business and Professions Code §§ 17200, et seq., and §§ 17500, et seq., and California Civil Code §§ 1750-1785, and Similar Statutes in Other States**

52.     Plaintiff incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

53.     This Count III is brought on behalf of the Class.

54.     T-Mobile, by its conduct alleged herein, failed to disclose and intentionally concealed from Plaintiff and the Class members T-Mobile's "upgrade fee" as described above.

55.     Furthermore, T-Mobile, in responding to customer inquiries, intentionally misled Plaintiff and the Class members as to the legality and enforceability of T-Mobile's "upgrade fee" as described above.

56.     At the time T-Mobile made its misrepresentations and omissions of material fact to Plaintiff and the Class members, T-Mobile knew or reasonably should have known the falsity and misleading nature of its statements and the deceptive character of its omissions of fact. As a result, T-Mobile acted in violation of California Business and Professions Code §§ 17200, et seq., and §§ 17500, et seq.

57.     In light of the knowledge of the true facts possessed by T-Mobile and T-Mobile's control and suppression of the information which might reveal the deceptive nature of the scheme

1    to charge an "upgrade fee" to Plaintiff and the Class members, T-Mobile did knowingly, recklessly,

2    and in conscious disregard of the true facts, conceal from Plaintiff and the Class members the

3    existence of the deceptive "upgrade fee" scheme and the resulting injuries to Plaintiff and the Class

4    members.

5          58.    As a result of the untrue and misleading statements and omissions by T-Mobile,

6    Plaintiff and the Class members have been misled and unfairly induced to enter into transactions

7    and to pay "upgrade fees" on invoices.  In doing so, Plaintiff and the Class members have been

8    injured in amounts not less than $5,000,000.  These sums have been paid to T-Mobile by Plaintiff

9    and the Class members and should be restored to Plaintiff and the Class members.

10          59.    T-Mobile violated California Business and Professions Code §§ 17200, *et seq.*, by

11    engaging and continuing to engage in the actions complained of herein, which constitute unfair

12    competition likely to deceive the general public in violation of California Civil Code §§ 1572

13    (governing fraud) and 1709 (governing deceit), California Business and Professions Code § 17500

14    (governing false and misleading advertising and sales), California Civil Code § 1670.5 (regarding

15    unconscionability), California Civil Code § 1770(a)(9), (13), (14), (16), and (19) (California

16    Consumer Legal Remedies Act), California Penal Code § 532, and other states' and federal statutes

17    and regulations enacted to protect consumers from fraudulent and deceptive business practices and

18    acts.  Consequently, T-Mobile's business practices and acts complained of herein are unlawful,

19    unfair and fraudulent.

20          60.    Unless restrained by this Court, T-Mobile will continue to engage in untrue and

21    misleading sales tactics and unlawful business practices, as alleged herein, in violation of California

22    Business and Professions Code §§ 17200, *et seq.*, and §§ 17500, *et seq.*, thus causing further injury,

23    expanding the number of injured members of the public beyond its already large size, and tending

24    to render any judgment at law, by itself, ineffectual.  Plaintiff and the Class members have no

25    adequate remedy at law in that T-Mobile will continue to engage in untrue and misleading sales

26    tactics and unlawful business practices, in violation of California Business and Professions Code §§

27    17200, *et seq.*, and §§ 17500, *et seq.*, thus engendering a multiplicity of judicial proceedings.

28

1    Injunctive relief prohibiting T-Mobile from engaging in the actions and omissions complained of

2    herein is both warranted and requested.

3        61.    In addition to violating California Business and Professions Code §§ 17200, *et seq.*,

4    and §§ 17500, *et seq.*, T-Mobile violated California Civil Code §§ 1750-1784 ("Consumer Legal

5    Remedies Act" or "CLRA") by engaging and continuing to engage in the actions complained of

6    herein.

7        62.    At all relevant times, Plaintiff and the Class members were "consumers" as defined

8    by California Civil Code §1761(d).

9        63.    At all relevant times, T-Mobile's wireless phones and handsets were "goods" as

10    defined in California Civil Code §1761(a).

11        64.    At all relevant times, T-Mobile's wireless telecommunications services were

12    "services" as defined in California Civil Code §1761(b).

13        65.    At all relevant times, T-Mobile was a "person" as defined in California Civil Code

14    §1761(c).

15        66.    At all relevant times, Plaintiff's and each Class member's purchase of new wireless

16    phones or handsets constituted a "transaction" as defined in California Civil Code §1761(e).

17        67.    The CLRA provides that it is unlawful to: (i) advertise goods or services with the

18    intent not to sell them as advertised; (ii) make false or misleading statements of fact concerning

19    reasons for, existence of, or amounts of price reductions; (iii) represent that a transaction confers or

20    involves rights, remedies or obligations that it does not have or involve, or which are prohibited by

21    law; (iv) represent that the subject of a transaction has been supplied in accordance with a previous

22    representation when it has not; and (v) insert an unconscionable provision in a contract.  Cal. Civ.

23    Code §§ 1770(a)(9), (13), 14), (16), and (19).

24        68.    T-Mobiles unlawful scheme regarding the imposition of the undisclosed and

25    misleading "upgrade fee" as described herein violates the CLRA.  T-Mobile advertised and offered

26    the phone and handsets at a price not inclusive of undisclosed additional charges.  In addition, T-

27    Mobile failed to disclose the "upgrade fee," and when confronted with questions following

28    invoicing the "upgrade fee," T-Mobile made false and misleading statements regarding the legality

1  of the fee and its basis in contract.  Furthermore, T-Mobile, in its customer contracts and terms and

2  conditions disclosed on its website has attempted to insert unlawful and unconscionable provisions

3  regarding mandatory arbitration and waiver of class action rights.

4     69.    Such actions by T-Mobile were and are oppressive, fraudulent, and malicious, and

5  were done with the intention on the part of T-Mobile of depriving Plaintiff and the Class members

6  of property and their legal rights, so as to justify an award of punitive damages.

7     70.    Moreover, Plaintiff and the Class members are entitled to recover attorney's fees and

8  costs pursuant to California Civil Code § 1780(d).

9     71.    In addition to violating the California statutes noted above, T-Mobile's unlawful

10  conduct described herein violates similar unfair and deceptive acts and practices laws of other

11  states, including, but not limited to, the following jurisdictions and statutes:

12     a.    Alabama:  T-Mobile's practices were and are in violation of Alabama's

13  Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.*

14     b.    Alaska:  T-Mobile's practices were and are in violation of Alaska's Unfair

15  Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

16     c.    Arizona:  T-Mobile's practices were and are in violation of Arizona's

17  Consumer Fraud Act, A.R.S. § 44-152, *et seq.*

18     d.    Arkansas:  T-Mobile's practices were and are in violation of Arkansas's

19  Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*

20     e.    Colorado:  T-Mobile's practices were and are in violation of Colorado's

21  Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

22     f.    Connecticut:  T-Mobile's practices were and are in violation of Connecticut's

23  Gen. Stat. § 42-110a, *et seq.*

24     g.    Delaware:  T-Mobile's practices were and are in violation of Delaware's

25  Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.*, and the Deceptive Trade Practices Act,

26  Del. Code Ann. tit. 6, § 2531, *et seq.*

27     h.    District of Columbia:  T-Mobile's practices were and are in violation of the

28  District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

1              i.      Florida:  T-Mobile's practices were and are in violation of Florida's

2  Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*

3              j.      Georgia:  T-Mobile's practices were and are in violation of Georgia's Fair

4  Business Practices Act, Ga. Code Ann., § 10-1-390, *et seq.*

5              k.     Hawaii:  T-Mobile's practices were and are in violation of Hawaii's Unfair

6  Practices Act, Haw. Rev. Stat. § 480-2, § 487-12.

7              l.       Idaho:  T-Mobile's practices were and are in violation of Idaho's Consumer

8  Protection Act, Idaho Code Ann. § 48-601, *et seq.*

9              m.    Illinois:  T-Mobile's practices were and are in violation of Illinois's

10  Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, and the Uniform

11  Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1.

12             n.      Indiana:  T-Mobile's practices were and are in violation of Indiana's

13  Deceptive Consumer Sales Act, Indiana Code 24-5-0.5-1, *et seq.*

14             o.      Iowa:  T-Mobile's practices were and are in violation of Iowa's Consumer

15  Fraud Act, Iowa Code § 714.16.

16             p.      Kansas:  T-Mobile's practices were and are in violation of Kansas's Unfair

17  Trade and Consumer Protection Act, Kan. Stat. Ann. § 50-401, *et seq.*, and § 50-601, *et seq.*

18             q.      Kentucky:  T-Mobile's practices were and are in violation of Kentucky's

19  Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

20             r.       Louisiana:  T-Mobile's practices were and are in violation of LSA R. S.

21  51:1410 and LSA R. S. 51:1401, *et seq.*

22             s.      Maine:  T-Mobile's practices were and are in violation of Maine's Uniform

23  Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, § 206, *et seq.*, and Required

24  Disclosures to Consumers laws, Me. Rev. Stat. Ann. tit. 10, §205-A, *et seq.*

25             t.       Maryland:  T-Mobile's practices were and are in violation of Maryland's

26  Consumer Protection Act, Md. Com. Law Code §13-101, *et seq.*

27             u.      Massachusetts:  T-Mobile's practices were and are in violation of

28  Massachusetts's Consumer Protection Act, Mass. Gen. Laws ch. 93A, *et seq.*

1      v.    Michigan: T-Mobile's practices were and are in violation of Michigan's

2   Consumer Protection Act, M.C.L. 445.901, *et seq.*

3      w.    Minnesota: T-Mobile's practices were and are in violation of Minnesota's

4   Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*, and the Unlawful Trade

5   Practices law, Minn. Stat. §325D.09, *et seq.*

6      x.    Mississippi: T-Mobile's practices were and are in violation of Mississippi's

7   Consumer Protection Act, Miss. Code Ann. §75-24-1 *et seq.*

8      y.    Missouri: T-Mobile's practices were and are in violation of Missouri's

9   Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

10     z.    Montana: T-Mobile's practices were and are in violation of Montana's

11  Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-101, *et seq.*

12     aa.   Nebraska: T-Mobile's practices were and are in violation of Nebraska's

13  Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.*, and the Uniform Deceptive Trade

14  Practices Act, Neb. Rev. Stat. §87-302, *et seq.*

15     bb.   Nevada: T-Mobile's practices were and are in violation of Nevada's

16  Deceptive Trade Practices Act, Nevada Revised Statutes 598.0903, *et seq.*

17     cc.   New Hampshire: T-Mobile's practices were and are in violation of New

18  Hampshire's Rev. Stat. Ann § 358-A:1, *et seq.*

19     dd.   New Jersey: T-Mobile's practices were and are in violation of New Jersey's

20  Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

21     ee.   New Mexico: T-Mobile's practices were and are in violation of New

22  Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-3, *et seq.*

23     ff.   New York: T-Mobile's practices were and are in violation of New York's

24  Gen. Bus. Law § 349, *et seq.*

25     gg.   North Carolina: T-Mobile's practices were and are in violation of North

26  Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1, *et seq.*

27     hh.   North Dakota: T-Mobile's practices were and are in violation of North

28  Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

1    ii. Ohio: T-Mobile's practices were and are in violation of Ohio's Consumer

2 Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.*, and Deceptive Sales Practices law,

3 Ohio Rev. Code Ann. § 4165.01, *et seq.*

4    jj. Oklahoma: T-Mobile's practices were and are in violation of Oklahoma's

5 Consumer Protection Act 15 0.S. § 751, *et seq.*

6    kk. Oregon: T-Mobile's practices were and are in violation of Oregon's

7 Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

8    ll. Pennsylvania: T-Mobile's practices were and are in violation of

9 Pennsylvania's Unfair Trade Practice and Consumer Protection law, 73 Pa. Stat. Ann. § 201-1, *et*

10 *seq.*

11    mm. Rhode Island: T-Mobile's practices were and are in violation of Rhode

12 Island's Deceptive Trade Practices Act, R.I. Gen Laws § 6-13.1-1, *et seq.*

13    nn. South Carolina: T-Mobile's practices were and are in violation of South

14 Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*

15    oo. South Dakota: T-Mobile's practices were and are in violation of SDCL §37-

16 24-1, *et seq.*

17    pp. Tennessee: T-Mobile's practices were and are in violation of Tennessee's

18 Consumer Protection Act of 1977, Tenn. Code Ann. § 47-18-101, *et seq.*

19    qq. Texas: T-Mobile's practices were and are in violation of Texas's Deceptive

20 Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

21    rr. Utah: T-Mobile's practices were and are in violation of Utah's Truth in

22 Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

23    ss. Vermont: T-Mobile's practices were and are in violation of Vermont's

24 Consumer Fraud law, Vermont Stat. Ann. tit. 9, § 2451, *et seq.*

25    tt. Virginia: T-Mobile's practices were and are in violation of Virginia's

26 Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq.*

27    uu. Washington: T-Mobile's practices were and are in violation of Washington's

28 Consumer Protection Act, RCW 19.86.010, *et seq.*

1          vv.    West Virginia:  T-Mobile's practices were and are in violation of West

2    Virginia's Consumer Credit and Protection Act, W.Va. Code § 46A-1-101, *et seq.*

3          ww.    Wisconsin:  T-Mobile's practices were and are in violation of Wis. Stat.

4    §§100.18(1) (Fraudulent Representations).

5          xx.    Wyoming:  T-Mobile's practices were and are in violation of W.S. §§ 40-12-

6    101, *et seq.*

7    72.    T-Mobile violated the aforementioned states' unfair business practice laws by

8    charging Plaintiff and the Class members an undisclosed "upgrade fee" in violation of their

9    contractual rights, and in violation of statutory and common law, as described above.

10    73.    As a result of these violations, T-Mobile has been unjustly enriched to the extent that

11    it has collected funds from Plaintiff and the Class members, including the $18 "upgrade fee."

12    Further, Plaintiff and the Class members have suffered monetary damages in the form of such fees

13    and charges described above.

14    74.    As a result of T-Mobile's violations of the aforementioned states' unfair competition

15    laws, Plaintiff and the Class members are entitled to recover compensatory damages, restitution,

16    punitive and special damages, including, but not limited to, treble damages, reasonable attorney's

17    fees and costs, and other injunctive and declaratory relief as deemed appropriate.

18    WHEREFORE, Plaintiff and the Class members pray for relief as set forth below.

19    **PRAYER FOR RELIEF**

20    WHEREFORE Plaintiff prays for relief as follows:

21    1.    For an order certifying this action as a class action on behalf of the Class described

22          above;

23    2.    For restitution and/or disgorgement of all amounts wrongfully charged to Plaintiff

24          and members of the Class;

25    3.    For damages according to proof;

26    4.    For costs of suit herein incurred;

27    5.    For both pre- and post-judgment interest on any and all amounts awarded;

28    6.    For an award of treble or punitive damages under applicable law;

7. For an award of attorney's fees as appropriate pursuant to the provisions of the California Consumer Legal Remedies Act, and other similar states' statutory provisions;

8. For declaratory judgment and injunctive relief declaring any and all mandatory arbitration clauses and class action waiver of rights to participation in contracts and/or terms and conditions of service as unconstitutional, unconscionable and unenforceable and enjoining enforcement thereof; and

9. For such other and further relief as the Court may deem just and proper.

DATED this 27th day of February, 2008          DICKS & WORKMAN, APC


                                               Joseph G. Dicks
                                               Attorneys for Plaintiff and the Class

# TABLE OF CONTENTS OF EXHIBITS

**Exhibit No.:**                                                                                    **Page No.:**

EXHIBIT 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-1 through 1-2

EXHIBIT 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-1 through 2-7

EXHIBIT 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-1 through 3-2

# EXHIBIT 1

Return to T-Mobile.com



Not your phone?    Tour My T-Mobile



# My **T··Mobile·**

**Hello: MIKE MARTINET**
760.644.7231
‣ View my profile  ‣ Logout

▸ SUPPORT FOR MY PHONE

ASK T-MOBILE    SEARCH

## ▌ BILL SUMMARY

Account number: 327898539

There is a portion of your balance now showing as past due. Please visit **Pay my bill** to make a payment to your account.

▸ PAY NOW ◂

‣ Use EasyPay to set up recurring payments

🖶 Print/View complete bill

| | |
|---|---|
| Mobile number: **(760) 644-7231** | |
| Amount due 02/15/08: | $891.89 |
| Payments received: | $0.00 |
| Additional charges and credits: | ($282.23) |
| Current Balance: | $609.66 |

Current balance due may not reflect recently made payments.

## ▌ RESOURCES

Minutes used as of
01/31/2008 02:15:10 PM

| WHENEVER | 1000 MINUTES/MONTH |
|---|---|

‣ See minutes used details

‣ View your current plan

Minutes used information is also available by dialing #MIN#

**Paperless Billing**

‣ Sign up today for Paperless Billing and receive e-mail reminders when your bill is ready

Billing Period
[Dec. 20, 2007 (11/20/07 - 12/19/07)]

| SERVICE DETAILS | SERVICE CHARGES | BILL DETAILS |
|---|---|---|

### Service Charges for (760) 644-7231

**Previous Balance and Payments**

| Item | Amount |
|---|---|
| Previous Balance | 522.44 |
| Payment Received On 12/10/07 | (98.13) |

**Monthly Service Charges**

| Item | Amount |
|---|---|
| Get More 1k w/N&W | 39.99 |
| Partial monthly charge for Bonus 200 Minutes from 11/20/07 to 11/25/07 | |
| Sidekick Unlimited | 19.99 |
| **Monthly Service Charges** | **59.98** |

**Adjustments to Bill**

| Item | Amount |
|---|---|
| CC Goodwill Credit ADJ | (15.00) |
| Equipment Sales Tax | (27.89) |
| Phone Upgrade | (299.99) |
| **Adjustments to Bill** | **(342.88)** |

**Usage Charges**

| Item | Amount |
|---|---|
| PREMIUM SERVICES | 16.93 |
| **Usage Charges** | **16.93** |

**One Time Charges**

| Item | Amount |
|---|---|
| Late fee for invoice due 11/15/07 | 5.79 |
| One time charge for Equipment Sales Tax | 24.24 |
| One time charge for Equipment Shipping/Handling | 15.00 |
| One time charge for Equipment purchase charge | 239.99 |
| One time charge for Upgrade Fee | 18.00 |
| Other Charges (Non-Communications Related) | |
| Equipment Protect by Asurion | 5.99 |
| **One Time Charge** | **303.02** |

▌ NOW AVAILABLE




▌ FREQUENTLY ASKED QUESTIONS

How do I read my bill?

How do I update my billing address?

How can I pay my bill?

Additional help >

Exhibit 1
Page 1-1

**Other Charges (Non-Communications Related)**

| Item | Amount |
| --- | --- |
| Equipment Protect by Asurion | 5.99 |
| **Other Charges (Non-Communications Related)** | **5.99** |

**Taxes, Fees and Surcharges**

| Item | Amount |
| --- | --- |
| **Government Fees and Taxes** | |
| CA Relay Service and Communications Device Fund | 0.15 |
| California High Cost Fund - A (CHCF-A) | 0.08 |
| California High Cost Fund - B (CHCF-B) | 0.53 |
| California Teleconnect Fund | 0.05 |
| Emergency Telephone Users Surcharge Tax (911) | 0.21 |
| Universal Lifeline Telephone Service Surcharge | 0.47 |
| City Utility Users Tax | 2.66 |
| **Other Fees & Government-Related Obligations**\*\* | |
| Federal Universal Service Fund | 0.76 |
| Regulatory Fee | 0.07 |
| Regulatory Programs Fee\* | 0.86 |
| | 644-7231 |
| | 898539 |
| **Taxes, Fees and Surcharges** | **5.84** |
| **Total Charges** | **473.19** |

\*\*These charges relate to your service. They may be imposed on us and passed through to you
pursuant to your contract.
\*Fee we collect and retain to help cover our costs related to funding and complying with
government mandates, programs and obligations.

 Print this page

 Print/View complete bill



Current balance is intended to reflect the balance that carries over from your last bill and any payment activity that has been recorded in our
system. Payments that have not yet posted will not appear.

Your printed T-Mobile bill will be mailed to the billing address in our records. Customers who have signed up for Paperless Billing will no longer
receive a printed bill. You may print a copy of your online bill by going to the Billing section and selecting Print/View complete bill at the bottom
of the Service details section.
Store Locator | Support | Contact Us | Coverage | Refer a Friend
T-Mobile.com : ©2002-2007 T-Mobile USA, Inc. | Terms of Use | Terms & Conditions | Return Policy | Privacy Policy

Exhibit 1
Page 1-2

# EXHIBIT 2

T · · Mobile· 

# Terms & Conditions

Effective 12/04 until amended

Welcome to T-Mobile. **BY ACTIVATING OR USING OUR SERVICE, YOU AGREE TO BE BOUND BY THESE TERMS AND CONDITIONS ("T&Cs"). PLEASE READ THESE T&Cs CAREFULLY. They affect your legal rights by, among other things, requiring MANDATORY ARBITRATION OF DISPUTES and charging an EARLY CANCELLATION FEE. IF YOU DO NOT AGREE TO THESE T&Cs, DO NOT ACTIVATE OR USE THE SERVICE OR YOUR WIRELESS PHONE, DEVICE, SMART CARD, OR OTHER EQUIPMENT ("PHONE") AND FOLLOW THE DIRECTIONS IN SEC. 5 BELOW.**

These T&Cs and your Service Agreement (if any) constitute your agreement with T-Mobile USA, Inc. and its affiliates (together, "T-Mobile", "we", or "us") for any wireless services and other telecommunications services that we provide you ("T-Mobile Services"), any applications, Phones, or products that you purchase or obtain from us or use with the Service ("Products"), and any applications or services that you purchase, obtain, or use that are provided through or with the Service, or billed to your T-Mobile account ("Third-Party Services") (T-Mobile Services and Third-Party Service together, the "Service"). These T&Cs supersede all earlier versions. To the extent these T&Cs conflict with the T-Mobile Terms and Conditions you receive with your Phone, these T&Cs apply. Rate plan and feature information for the Services you select or use are available to you when you purchase the Service at retail locations and on our Web site, and are a part of our agreement and are incorporated by reference into these T&Cs (the T&Cs, your Service Agreement, and the rate plan information together are referred to as the "Agreement"). You acknowledge that no employee, dealer, or other agent is authorized to make any representation or warranty (other than as described in the Agreement or our current materials) with respect to the Agreement, Service, Products, or rate plans and offerings, or to waive or modify any terms or provisions of the Agreement.

1.  <u>Acceptance of Agreement:</u> You accept this Agreement by: (a) activating or using the Service; (b) signing, orally or electronically accepting the Agreement; or (c) are deemed to accept the Agreement, whichever occurs first. You must activate Service within 30 days after purchase of your Phone (unless activation as provided in Sec. 5). If you don't activate Service within 30 days, you are deemed to accept the Agreement, and you agree to pay monthly Service charges for the Term according to your rate plan.

2.  <u>MANDATORY ARBITRATION TO RESOLVE DISPUTES/CLASS ACTION WAIVER/JURY TRIAL WAIVER: ARBITRATION. PLEASE READ THIS PROVISION CAREFULLY. IT MEANS THAT, EXCEPT AS NOTED BELOW, YOU AND WE WILL ARBITRATE OUR DISPUTES. ANY CLAIM OR DISPUTE BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OR THE PROVISION OF SERVICES OR PRODUCTS TO YOU, INCLUDING ANY BILLING DISPUTES ("CLAIM"), SHALL BE SUBMITTED TO FINAL, BINDING ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA").</u> This agreement to arbitrate also requires you to arbitrate claims against other parties relating to Services or Products provided or billed to you, including suppliers of Services and Products and our retail dealers, if you also assert Claims against us in the same proceeding. You and we acknowledge that the Agreement affects interstate commerce and that the Federal Arbitration Act and federal arbitration law apply to arbitrations under the Agreement (despite the choice of law provision in Sec. 23).

    BEFORE INSTITUTING ARBITRATION, YOU AGREE TO PROVIDE US WITH AN OPPORTUNITY TO RESOLVE YOUR CLAIM BY SENDING A WRITTEN DESCRIPTION OF YOUR CLAIM TO US AT T-MOBILE CUSTOMER RELATIONS, P.O. BOX 37380, ALBUQUERQUE, NM 87176-7380 AND NEGOTIATING WITH US IN GOOD FAITH REGARDING YOUR CLAIM. IF WE ARE NOT ABLE TO RESOLVE YOUR CLAIM WITHIN 30 DAYS OF RECEIPT OF YOUR NOTICE, THEN YOU OR WE, INSTEAD OF SUING IN COURT, MAY INITIATE ARBITRATION PROCEEDINGS WITH THE AAA. YOU MUST SERVE OUR REGISTERED AGENT (SEE SEC. 20) IN ORDER TO BEGIN AN ARBITRATION. ARBITRATION WILL BE CONDUCTED UNDER THE AAA'S PUBLISHED WIRELESS INDUSTRY ARBITRATION RULES AND SUPPLEMENTAL PROCEDURES FOR CONSUMER-RELATED DISPUTES, WHICH ARE AVAILABLE BY CALLING THE AAA AT 1-800-778-7879 OR VISITING ITS WEB SITE AT www.adr.org. The AAA has a fee schedule for arbitrations. You will pay your share of the arbitrator's fees and administrative expenses ("Fees and Expenses") except that: (a) for Claims less than $25.00, we will pay all Fees and Expenses; and (b) for Claims between $25.00 and $1,000.00, you will pay only $25.00 in Fees and Expenses, or any lesser amount as provided under AAA's Supplemental Procedures for Consumer-Related Disputes. **You and we agree to pay our own other fees, costs, and expenses, including those for any attorneys, experts, and witnesses.** An arbitrator may only award as much and the type of relief as a court with jurisdiction in the place of arbitration that is consistent with law and this Agreement. An arbitrator may issue injunctive or declaratory relief but only applying to you and us and not to any other customer or third party. **As a limited exception to the agreement to arbitrate, you and we agree that:** (a) you may take Claims to small claims court, if your Claims qualify for hearing by such court; and (b) if you fail to timely pay amounts due, we may assign your account for collection, and the collection agency may pursue in court claims limited strictly to the collection of the past due debt and any interest or cost of collection permitted by law or the Agreement.

    <u>CLASS ACTION WAIVER. WHETHER IN COURT, SMALL CLAIMS COURT, OR ARBITRATION YOU AND WE MAY ONLY BRING CLAIMS AGAINST EACH OTHER IN AN INDIVIDUAL CAPACITY AND NOT AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN A CLASS OR REPRESENTATIVE ACTION. NOTWITHSTANDING SEC. 22, IF A COURT OR ARBITRATOR DETERMINES IN A CLAIM BETWEEN YOU AND US THAT YOUR WAIVER OF ANY ABILITY TO PARTICIPATE IN CLASS OR REPRESENTATIVE ACTIONS IS UNENFORCEABLE UNDER APPLICABLE LAW, THE ARBITRATION AGREEMENT WILL NOT APPLY, AND YOU AND WE AGREE THAT SUCH CLAIMS WILL BE RESOLVED BY A COURT OF APPROPRIATE JURISDICTION, OTHER THAN A SMALL CLAIMS COURT.</u>

    <u>JURY TRIAL WAIVER. WHETHER ANY CLAIM IS IN ARBITRATION OR IN COURT (AS PROVIDED IN THIS SEC. 2) YOU AND WE WAIVE ANY RIGHT TO JURY TRIAL INVOLVING ANY CLAIMS OR DISPUTES BETWEEN YOU AND US.</u>

3. **Changes to the Agreement or Charges.** EXCEPT TO THE EXTENT PROHIBITED BY LAW, IF WE: (A) INCREASE THE CHARGES INCLUDED IN YOUR MONTHLY RECURRING ACCESS RATE PLAN, OR (B) MODIFY A MATERIAL TERM OF OUR AGREEMENT WITH YOU AND THE MODIFICATION WOULD BE MATERIALLY ADVERSE TO YOU, WE WILL NOTIFY YOU OF THE INCREASE OR MODIFICATION AND YOU CAN CANCEL THAT SERVICE WITHOUT PAYING A CANCELLATION FEE (WHICH IS YOUR ONLY REMEDY) BY FOLLOWING THE CANCELLATION INSTRUCTIONS IN THE NOTICE. IF YOU DO NOT CANCEL YOUR SERVICE BY FOLLOWING THOSE INSTRUCTIONS, OR YOU OTHERWISE ACCEPT THE CHANGE, THEN YOU AGREE TO THE INCREASE OR MODIFICATION, EVEN IF YOU PAID FOR SERVICE IN ADVANCE. IF THE NOTICE DOES NOT SAY HOW LONG YOU HAVE TO CANCEL, THEN IT IS WITHIN **14 DAYS** AFTER THE DATE OF THE NOTICE, UNLESS A LONGER PERIOD IS REQUIRED BY LAW. EXCEPT TO THE EXTENT PROHIBITED BY LAW, CHARGES FOR PRODUCTS, SERVICES, OPTIONAL SERVICES, OR ANY OTHER CHARGES THAT ARE NOT INCLUDED IN YOUR MONTHLY RECURRING ACCESS RATE PLAN (SUCH AS DIRECTORY ASSISTANCE, ROAMING, DOWNLOADS, AND THIRD-PARTY CONTENT) ARE SUBJECT TO CHANGE AT ANY TIME WITHOUT NOTICE, AND IF YOU CONTINUE TO USE THOSE SERVICES, OR YOU OTHERWISE AGREE TO THE CHANGES, THEN YOU AGREE TO THE NEW CHARGES. VISIT OUR WEB SITE, RETAIL LOCATIONS, OR CALL CUSTOMER CARE FOR CURRENT CHARGES.

4. **Term; Cancellation of Service.** If you select a rate plan with a fixed term longer than 1 month, then this Agreement will continue for the full number of months selected ("Term"). **You may cancel Service for any reason by providing us with notice (we may require up to 30 days), which cancellation will take effect on or before the beginning of the next billing cycle after the notice period, BUT IF YOU CANCEL SERVICE OR BREACH THE AGREEMENT BEFORE YOUR TERM ENDS, YOU AGREE THAT THE RESULTING HARM TO US IS IMPRACTICABLE OR EXTREMELY DIFFICULT TO MEASURE AND YOU AGREE TO PAY US IN ADDITION TO AMOUNTS OWED, AS A REASONABLE ESTIMATE OF OUR HARM, A $200.00 CANCELLATION FEE PER NUMBER (which may be deducted from your deposit or any amounts prepaid by you, charged to your card or billed to your account). Our cost of providing your Service and Phone is not incurred evenly over the Term. Our monthly charges and other rates are based on the assumption that you will remain a customer for the whole Term. You and we agree that it is reasonable for your rates to include the amount of the cancellation fee. We may suspend or terminate your Service for any reason or no reason upon 3 days notice (unless a longer period is required by law). If you breach the Agreement, we may suspend or terminate your Service immediately without prior notice (except to the extent prohibited by law) and do the same for any other service you receive under any other agreement with us. You breach the Agreement by:** (a) failing to pay any sum when due; (b) failing to comply with any provision in this Agreement or any other agreement between us; (c) becoming the subject of any proceedings under the Bankruptcy Code; (d) becoming insolvent; or (e) your financial institution dishonoring or returning for insufficient funds your check or credit card. In the event of cancellation, you are responsible for payment of all charges (including any cancellation fee) due to us under the Agreement, which charges will be immediately due and payable. If we reinstate Service to you after discontinuing Service, you may be subject to a credit check and agree to pay reactivation charges or deposits. After the Term expires, you become a month-to-month customer but are still subject to the Agreement, as modified.

5. **Cancellation and Return Policy.** There is a Return Period during which you can cancel a newly activated line of Service without paying a cancellation fee. **The Return Period is 14 calendar days from the date of Service activation or 30 days from the Phone's purchase date if you have not activated Service (the Return Period may be longer in some states, such as CA - visit T-Mobile.com, or ask a sales or customer care representative). Even if you cancel Service, you must pay all Service and other charges incurred prior to cancellation.** In order to receive a refund of the purchase price (minus shipping and rebates) of your Phone, you must return it in "like-new" condition with proof of purchase to the place of purchase during the Return Period along with its original packaging and contents. You may be required to pay a restocking fee. The purchase price of your Phone may have been subsidized to facilitate your subscription to the Service. **If you cancel service and do not return the Phone in "like-new" condition within the Return Period, you will be charged for the difference between the full retail price of the Phone without activation (which may be more than the price with Service activation) and the price you paid for the Phone (minus rebate).** This Sec. 5 does not apply to Phone upgrade, replacement, exchange, or other similar programs; see those program materials for details.

6. **Service Availability and Limits.** Your Phone operates as a radio and Service is only available when your Phone is within range of an antenna providing Service. Coverage maps only approximate our wireless coverage area outdoors; actual service area, coverage, and quality may vary and change without notice. There may be gaps in Service within the estimated coverage areas shown on coverage maps. Even within a coverage area, factors, such as: network changes, emergencies, traffic volume, transmission limits, service outages, technical limitations, signal strength, your equipment, interconnecting carriers, terrain, structures, weather and other conditions (without limit) may interfere with actual service, quality, and availability. Calls may be interrupted, dropped, refused, or limited. Coverage maps may depict coverage in areas where networks are operated by our affiliates and roaming partners; such coverage may change without notice. We are not responsible for those networks and some Services are not available on third-party networks or while roaming. We may impose credit, usage, or other limits to Service, cancel or suspend Service, or block certain types of calls, messages, or sessions (such as international, 900, or 976 calls) at our discretion. We may suspend Service without notice if you exceed any credit limit. Service may not be transferred to another market except at our discretion, and we may charge transfer fees. WE ARE NOT LIABLE FOR ANY SERVICE LIMITS, FAILURES, OR OUTAGES, INCLUDING WITHOUT LIMIT, THE FAILURE OF ALERTS, 9-1-1 EMERGENCY, PRIORITY ACCESS, OR SECURE SERVICE CALLS TO BE CONNECTED OR COMPLETED, OR THE FAILURE TO PROVIDE ALERTS OR ACCURATELY LOCATE ANY 9-1-1 CALL (SEE SEC. 14). Location services, including 9-1-1 location services, emergency or other alert systems, priority access, and secure service calls may not be available in your area and are subject to the Service limitations in this Sec. 6.

7. **Use of Service.** You may not use, or attempt to use, the Service, the network, or your Phone for any fraudulent, unlawful, improper, harassing, excessive, harmful, or abusive purpose ("Improper Uses"), or so as to adversely or negatively impact our customers, employees, business, ability to provide quality service, reputation, or network, or any other person. We may determine on a case-by-case basis what constitutes Improper Uses. Improper Uses include, without limit: (a) using an automatic dialer or program; (b) sending unsolicited messages or calls; (c) attempting to interfere with the access of any user, host, or network; (d) identity theft; (e) attempting to decipher, decompile, or reverse engineer any software; (f) posting or transmitting unlawful, infringing, or objectionable content as determined by us; (g) probing or attempting

Exhibit 2
Page 2-2

to tamper with or harm our systems, network, or customers; or (h) reselling or attempting to resell any aspect of the Service, whether for profit or otherwise. If we suspect a violation of this provision, we may: (i) begin legal action; (ii) suspend or terminate Service immediately and without prior notice; (iii) suspend or terminate service provided to you under any other agreement with us; and (iv) cooperate with law enforcement in prosecuting offenders. You agree to cooperate with us in investigating suspected violations. We may terminate your Service or change your rate plan at any time, with notice, if we determine, in our sole discretion, that your use of the Service is excessive, unusually burdensome, or unprofitable to us. You have no proprietary or ownership rights to a specific wireless telephone number ("Number"), IP address, or e-mail address assigned to you or your Phone: we may change them at any time. You may not program any other Number into your Phone. We may charge you to change your Number.

8.  **Use of Phone with Other Providers/Phone Purchases.** Wireless devices and networks do not all use the same technologies. Your Phone may not be compatible with the network and services provided by another wireless service provider and, therefore, may not work with that provider's wireless service. You may buy a Phone from us, or from someone else, but it must be GSM/GPRS equipment that is compatible and approved for use with our network and Services and we do not guarantee that all T-Mobile features will be available with such equipment. A T-Mobile Phone may be programmed to accept only a T-Mobile SIM card.

9.  **Changes to Your Account.** If you give your personal account validation information to someone, they can access and make changes to your account just as you can. You may request to switch to another rate plan, and if we authorize the change, a transfer fee may apply and the new rates will become effective by the start of your next billing cycle. **Changes may require your agreement to a new Term (if you select a promotional rate plan or special Phone pricing) or new T&Cs. If we allow you to temporarily suspend your account, you may continue to pay monthly charges and we may extend the Term for the length of that suspension.**

10. **Deposits.** At any time, we may require a deposit from you (in which you grant us a security interest) or increase the amount of your deposit. If we notify you of an increase not associated with a change in rate plan, you may either (a) provide us with the increased deposit or (b) cancel Service within 7 days following the date of the notice (any cancellation fee will be waived). Except to the extent prohibited by law, your deposit may be commingled with other funds and will not earn interest. You may not use your deposit to pay your bills or delay payment, but we can apply your deposit to any charges that you owe us. If Service is cancelled for any reason, any deposit will be applied toward amounts you owe us at or after cancellation. Any remaining deposit will be returned to you at your billing address. Except to the extent prohibited by law, we will not refund any balances of $5.00 or less unless you contact us to request it. We will hold such money for you for up to 1 year (without accruing interest for your benefit), but you forfeit to us any portion of the money left after 1 year. You also forfeit any money that the U.S. Mail cannot deliver and returns to us.

11. **Billing, Charges, and Late Fees.** You authorize us to verify your creditworthiness with a credit-reporting agency at any time. You will be charged for Service and other features on a monthly billing cycle basis and we may change your billing cycle at any time. **You agree to timely pay in full each month all charges and fees associated with the Service, including without limit, monthly recurring Service charges, charges described in Sec. 12, airtime, roaming, long distance, toll, landline access, messages (whether read or unread, solicited or unsolicited), images, sounds, data, features (such as Web access, text messages, and voicemail), calling services (such as operator or directory assistance and calling card use), additional or optional services that you use or are processed through your Phone (or Number, IP address, or e-mail address assigned to or authorized by you), and you remain liable for payment even if a third party agrees to pay your charges. You will be charged for more than one call when you use certain features resulting in multiple inbound or outbound calls (such as call forwarding, call waiting, voicemail retrieval, and conference calling). All lines use and share the airtime and features included in Family or other pooling plans. Mobile to mobile minutes are those used between T-Mobile Phones while on the T-Mobile USA network (and not roaming or affiliate networks). Except to the extent prohibited by law, billing of roaming charges and minutes or Services used may be delayed or applied against included minutes or Services in subsequent billing cycles, which may cause you to exceed your included minutes or Services in a particular billing cycle. Roaming and other call rating (such as time of call) depend on the location of the network equipment providing Service for a particular call and not the location of the Phone. For billing purposes, you agree not to rely on indicators on your Phone (such as roaming and call time), which may be inaccurate. UNUSED MINUTES OR OTHER ALLOTMENTS FROM YOUR RATE PLAN EXPIRE AT THE END OF YOUR BILLING CYCLE AND DO NOT CARRY OVER TO SUBSEQUENT BILLING CYCLES. PARTIAL MINUTES OF AIRTIME USAGE ARE ROUNDED UP AND CHARGED, OR DEDUCTED FROM ANY INCLUDED MINUTES, AS FULL MINUTES; AIRTIME USAGE IS MEASURED FROM THE TIME THE NETWORK BEGINS TO PROCESS THE CALL (BEFORE THE PHONE RINGS OR THE CALL IS ANSWERED) THROUGH ITS TERMINATION OF THE CALL (AFTER YOU HANG UP). FOR BILLING PURPOSES, THE TIME OR DAY (SUCH AS NIGHTS AND WEEKENDS) OF AN ENTIRE CALL IS DETERMINED BY THE TIME THE CALL STARTS. UNLESS OTHERWISE SPECIFIED IN YOUR RATE PLAN MATERIALS, WEEKENDS ARE MIDNIGHT FRIDAY TO MIDNIGHT SUNDAY. NIGHTS ARE 9:00 P.M. TO 6:59 A.M.**

**Incorrect Charges. If you believe your bill contains an incorrect charge, you have 60 days from the date of the first bill that contains the charge to notify us or you waive any right to dispute the charge.** To notify us, please contact Customer Care at T-Mobile.com, 1-800-937-8997, or 611 from your Phone. We may require you to describe the dispute in writing. Any written communications concerning charges must be sent to the T-Mobile Customer Relations address in Sec. 2. If you accept a credit to resolve an issue, you agree the issue is fully resolved. If Customer Care does not resolve your dispute and you still wish to pursue the matter, follow the dispute resolution process described in Sec. 2. **California customers: our Utility number is U-3056-C; if you file a billing-related claim with the Consumer Affairs Branch ("CAB") of the CPUC you must, within 24 hours of filing, inform us by writing to the Customer Relations address in Sec. 2 with sufficient information to identify you and your account. If we resolve your dispute, your CAB claim will be deemed resolved at that time, and you agree to promptly withdraw your claim with the CAB. Payments. We may require payment before your due date if we are concerned about your ability to pay us (such as when you have an unusually high balance). For your payment to be deemed received by us and your account to be timely credited, you must provide with your payment information sufficient to identify you and your account (your account number).** If we accept late or partial payments or payments with limiting notations, it will not waive any of our rights to collect all amounts that you owe us and it will not be an accord and satisfaction. If we agree to an alternate payment plan, we may confirm it in any manner, including by electronic means. **If your

financial institution dishonors or returns for insufficient funds your check or credit card, it is a breach of this Agreement and we may (a) charge you a fee of $20.00 or such amount as may be permitted by law, (b) stop accepting checks, credit card or other similar payment methods from you, and (c) immediately suspend or cancel your Service. We may use a collection agency and charge you for their fees billed to us for trying to collect what you owe us. Late Fees. You agree to pay 1.5% or $5.00 per month (or portion of a month), whichever is greater, on any past due balances until paid, subject to the highest amount permitted by law. Except to the extent prohibited by law, this late fee may be charged regardless of any disputes you may have raised regarding your invoiced charges.

12.  **Taxes & Fees/Regulatory and Administrative Fees.** We bill you for taxes, fees, and other charges (such as sales, use, excise, public utility and other taxes) levied by or remitted to domestic or foreign governments or authorities and imposed on you or us as a result of providing the Service or your Phone ("Taxes & Fees"). Any tax exemption only applies after the date we receive from you acceptable documentation. We will determine, in our discretion, the type and amount of the Taxes & Fees to be billed. These Taxes & Fees may change at any time without notice. We may also bill you for regulatory and administrative fees ($0.86 per line per month as of 12/04) to recover our costs of complying with certain regulatory mandates (in our discretion) and Universal Service Fees ("USF") or similarly imposed charges (the amount or method of calculation of these fees may change at any time without notice to you) except to the extent prohibited by law. Regulatory and administrative fees and USF are not taxes or government required charges. We may impose regulatory and administrative fees whether or not all or some services are used, or available to you, or in your location. We are required to use the residential or business street address you provided us to determine certain Taxes & Fees. If you give us an address (such as a PO box) that is not a recognized street address, does not identify the taxing jurisdictions applicable to the address or does not reflect the service area associated with your Number, you may be assigned a default location for Taxes & Fees calculation, which may result in a higher or lower charge for certain Taxes & Fees and you have 60 days from the date of the first bill that contains disputed Taxes & Fees to notify us or you waive your right to dispute those Taxes & Fees.

13.  **Disclaimer of Warranties.** EXCEPT FOR ANY OTHER WRITTEN WARRANTY THAT MAY BE PROVIDED, AND TO THE EXTENT PERMITTED BY LAW, ALL SERVICES, PRODUCTS, AND THIRD-PARTY PRODUCTS ARE PROVIDED "AS IS", "WITH ALL FAULTS", AND WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMIT, WARRANTIES OF TITLE, MERCHANTABILITY, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE, ALL OF WHICH ARE EXPRESSLY DISCLAIMED. YOU ASSUME ALL RESPONSIBILITY AND RISK FOR USE OF THE SERVICE OR PRODUCTS. WE DO NOT AUTHORIZE ANYONE TO MAKE A WARRANTY OF ANY KIND ON OUR BEHALF, AND YOU SHOULD NOT RELY ON ANY SUCH STATEMENT. ANY STATEMENTS MADE IN PACKAGING, MANUALS OR OTHER DOCUMENTS, OR BY ANY OF OUR DEALERS (EXCEPT FOR ANY WRITTEN LIMITED WARRANTY THAT MAY BE PROVIDED), ARE FOR INFORMATIONAL PURPOSES ONLY AND ARE NOT WARRANTIES BY US OF ANY KIND. WE AND OUR OFFICERS, DIRECTORS, EMPLOYEES. AGENTS, DEALERS, SUPPLIERS, PARENTS, SUBSIDIARIES OR AFFILIATES ("T-MOBILE AFFILIATES") DO NOT WARRANT THAT THE INFORMATION, SOFTWARE, PRODUCTS, PROCESSES, OR SERVICES WILL BE UNINTERRUPTED, ACCURATE, COMPLETE, USEFUL, FUNCTIONAL, BUG OR ERROR FREE. IF YOU RECEIVED A WRITTEN "T-MOBILE LIMITED WARRANTY" WITH YOUR PHONE, IT IS THE ONLY WARRANTY MADE BY US WITH RESPECT TO THE PHONE. IF APPLICABLE STATE LAW DOES NOT ALLOW THE DISCLAIMER OF CERTAIN IMPLIED WARRANTIES, THE RELEVANT PORTIONS OF THE ABOVE EXCLUSION MAY NOT APPLY TO YOU.

14.  **Limitation of Liability.** We are not liable to you, other users of your Phone or third parties for any deficiency in performance or quality, caused in whole or in part by an act or omission of an underlying carrier or service provider, Web site, messaging community, dealer, equipment or facility failure, Phone failure or unavailability, discontinuation of Service, or Phones, network problems, lack of coverage or network capacity, equipment or facility upgrade or modification, delay or failure of number portability, acts of God, strikes, fire, terrorism, war, riot, emergency, government actions, equipment or facility shortage or relocation, the failure of an incoming or outgoing call, including 9-1-1 emergency, priority access, or secured service call, to be connected or completed or for the functionality of location services, including 9-1-1 location services, priority access, or secured call or alert service, or causes beyond our reasonable control. EVEN IF T-MOBILE HAS BEEN ADVISED OF THE POSSIBILITY OF DAMAGES, T-MOBILE AND T-MOBILE AFFILIATES WILL NOT BE LIABLE TO YOU OR ANY OF YOUR EMPLOYEES, AGENTS. CUSTOMERS OR ANY THIRD PARTIES FOR ANY DAMAGES ARISING FROM USE OF THE SERVICE OR ANY PHONE, INCLUDING WITHOUT LIMITATION: PUNITIVE, EXEMPLARY, INCIDENTAL, TREBLE, SPECIAL, OR CONSEQUENTIAL DAMAGES; LOSS OF PRIVACY OR SECURITY DAMAGES; PERSONAL INJURY OR PROPERTY DAMAGES; COPYRIGHT, TRADEMARK, PATENT. TRADE SECRET, OR OTHER INTELLECTUAL PROPERTY DAMAGES; OR ANY DAMAGES WHATSOEVER ARISING FROM INTERRUPTION OR FAILURE OF SERVICE, LISTING ERRORS, LOST PROFITS, LOSS OF BUSINESS, LOSS OF DATA, LOSS DUE TO UNAUTHORIZED ACCESS OR DUE TO VIRUSES OR OTHER HARMFUL COMPONENTS, COST OF REPLACEMENT PRODUCTS AND SERVICES, SUSPENSION, TERMINATION, OR THE INABILITY TO USE THE SERVICE OR ANY PRODUCT, THE CONTENT OF ANY DATA TRANSMISSION, COMMUNICATION, OR MESSAGE TRANSMITTED TO OR RECEIVED BY YOUR PHONE (WHETHER READ OR UNREAD, SOLICITED OR UNSOLICITED). OR LOSSES RESULTING FROM ANY PRODUCTS, GOODS, OR SERVICE PURCHASED, MESSAGES RECEIVED, OR TRANSACTIONS ENTERED INTO THROUGH THE SERVICE. IF THE STATE LAW APPLICABLE TO YOUR CLAIMS DOES NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR OTHER MODIFICATIONS OF OR LIMITATIONS TO CERTAIN REMEDIES, THE RELEVANT PORTIONS OF THE ABOVE EXCLUSION OR LIMITATION WILL NOT APPLY TO YOU.

THE MAXIMUM AGGREGATE LIABILITY OF T-MOBILE AND T-MOBILE AFFILIATES TO YOU, AND THE EXCLUSIVE REMEDY AVAILABLE IN CONNECTION WITH THE AGREEMENT FOR ANY AND ALL DAMAGES, INJURY OR LOSSES ARISING FROM ANY AND ALL CLAIMS OR CAUSES OF ACTION RELATED TO SERVICES OR PHONES, SHALL BE A REFUND OR REBATE OF THE PRORATED MONTHLY OR OTHER CHARGES YOU PAID OR OWE US FOR THE APPLICABLE SERVICE OR PHONE. THE EXISTENCE OF MULTIPLE CLAIMS OR SUITS UNDER OR RELATED TO THIS AGREEMENT WILL NOT ENLARGE OR EXTEND THE LIMITATION OF MONEY DAMAGES. **EXCEPT TO THE EXTENT PROHIBITED BY LAW, ALL CLAIMS MUST BE BROUGHT WITHIN 2 YEARS OF THE DATE THE CLAIM ARISES.**

15.  **Indemnification.** You agree to defend, indemnify, and hold us. T-Mobile Affiliates, and any roaming or network partner

Exhibit 2
Page 2-4

harmless from any and all claims, demands, actions, liabilities, costs, or damages arising out of your use of the Service or Products, any legal disclosures we make relating to your Service or Product, or your breach of this Agreement. You further agree to pay our reasonable attorneys' and expert witnesses' fees and costs arising from any actions or claims by third parties and those incurred in establishing whether this Sec. 15 applies.

16.  **Privacy.** Wireless systems use radios to transmit communications over a complex network. We do not guarantee that your communications using the Service or Products will be private or secure, and we are not liable to you for any lack of privacy or security you may experience. You are responsible for taking precautions and providing security measures best suited for your situation and intended use of the Service. **We may (but are not required to) monitor, intercept, and disclose your transmissions, location or communications and may disclose your billing, account, calling records, or other information, in good faith reliance on legal process, if required by law or to protect our rights, business, network or customers. We may locate you through our network.** Your caller identification (such as your name and Number) even **if unlisted may be displayed to others (for example, on the equipment or bill of the person receiving your call or any internet site you visit.)** We may list your name, address, and Number in a published directory with your consent. For more information on our privacy policies, please see our privacy notice at www.t-mobile.com/privacy. The way third parties handle and use your personal information is governed by their policies and we are not responsible for their policies, or their compliance with them.

17.  **Lost or Stolen Phone.** If your Phone is lost or stolen ("Lost Phone") you will not be liable for unauthorized airtime charges incurred on the Lost Phone if you: (a) notify us immediately; (b) ask us to deactivate the Lost Phone; and (c) provide within 14 days any documentation we request, including a police report. **You must fulfill the remainder of your Term by activating a replacement Phone (which may be full price) or the cancellation fee will apply.**

18.  **Number Portability.** You may be able to transfer your Number to another wireless carrier or to bring your number to us. For information about Number Portability, please visit T-Mobile.com or contact Customer Care at 1-800-937-8997 or 611 from your Phone. You may not transfer your Number if your account has been cancelled or suspended, or prepaid account expired. **You remain liable for charges incurred resulting from your Service with us or service with your former carrier, including cancellation fees. If you call 9-1-1 after you request a transfer, but before you receive confirmation of completion, the 9-1-1 operator may not have accurate information on your identity and location. You must inform the 9-1-1 operator of your identity and location immediately upon placing the call.**

19.  **Assignment.** We may assign all or part of our rights or duties under the Agreement without such assignment being considered a change to the Agreement, and without notice to you, except to the extent provided by law. We are then released from all liability. You may not assign the Agreement without our prior written consent. Subject to these restrictions, the Agreement will bind the heirs, successors, subcontractors, and assigns of the respective parties, who will receive its benefits.

20.  **Notices/Customer Communications.** We may send you written notice, which may be on or included with your bill, which is considered given and received by you on the third day after the date deposited in the US Mail to your address in our billing records. You agree we may also notify and communicate with you, or respond to your inquiries electronically through your Phone or otherwise, such as by e-mail, voicemail, or text messaging, which is considered given and received immediately upon transmission. Written notice to us is considered given when received by our registered agent, Corporation Services Company ("CSC") 1010 Union Ave. SE, Olympia, WA 98501.

21.  **Digital Millennium Copyright Act ("DMCA") Notice.** To the extent in providing Service we may act as a "services provider" (as defined by DMCA) and offer services as online provider of materials and links to third-party sites. As a result, third-party materials that we do not own or control may be transmitted, stored, accessed, or made available using the Service. If you believe material available via the Service infringes a copyright, notify us using the notice procedure under the DMCA. We will respond expeditiously to remove or disable access to such material and will follow the procedures specified in the DMCA to resolve the claim. Our designated agent to whom you must address infringement notices under the DMCA is CSC (see Sec. 20).

22.  **Severability and Survivability.** Except to the extent expressly set forth in Sec. 2, all terms and conditions of these T&Cs are independent of each other and if any provision of these T&Cs is held to be inapplicable or unenforceable, then (a) that term or provision shall be construed, as nearly as possible, to reflect the intentions of the parties with the other terms or provisions remaining in full force and effect, (b) the T&Cs will not fail their essential purpose, and (c) the balance of the T&Cs remain unaffected and in full force and effect, unless our obligations are materially impaired, in which event we have the right to terminate the Agreement. You and we will continue to be bound by the following Secs. (and any other provisions or rights and obligations that may reasonably be construed as surviving) of these T&Cs after the Agreement ends, regardless of reason: 2-6, 10-15, 18, 19, 20, 22, 23, 25, and 26.

23.  **Entire Agreement/Applicable Law/Venue/Miscellaneous.** This Agreement represents the final and entire agreement between you and us regarding the Service and Products. Electronic images of the Agreement will be considered originals. You acknowledge that you have not relied on any other representations not specifically included in this Agreement. If we don't enforce our rights under any of the provisions of the Agreement, we may still require strict compliance in the future. You represent that you are of legal age and have the legal capacity to enter into this Agreement. If you are contracting on behalf of a company, you represent that you are authorized to enter into this Agreement and agree to be personally liable for all accounts if you are not so authorized. **This Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state in which your billing address in our records is located. Foreign laws do not apply. Arbitration proceedings or any actions to enforce an arbitration award must be in the state where your Service is principally provided, but not outside the US.**

24.  **Additional Terms for Prepaid Customers.** You are responsible for prepaying all charges for using the Service. The airtime balance in your prepaid account is reduced by the charges attributable to your use of the Service. Service lasts as long as the earlier of (a) the time period on a prepaid card or coupon or (b) when the airtime balance goes to zero, then Service will be interrupted. You may continue to use Service by purchasing additional prepaid Service. If your account expires, you may lose your Number. You will not receive a monthly bill or activity record. **Prepaid Service is non-refundable (even if returned**

Exhibit 2
Page 2-5

during the return period), and no refunds or other compensation will be given for unused airtime balances, lost or stolen prepaid cards, or coupons. Applicable Taxes & Fees will be included in your prepaid charges.

25. **Additional Terms for SmartAccess Customers.** SmartAccess is subject to credit eligibility, determined in our discretion. We may suspend Service to any Number without prior notice if your account balance exceeds your spending limit or you are late with a payment (whether or not you exceed your spending limit). If we suspend Service because your account balance exceeds your spending limit, we may, in our sole discretion, reinstate Service after you make a payment that reduces your account balance and your account is not in arrears. If we suspend Service because you are late with payment, we may, in our sole discretion, reinstate Service if you pay the entire balance owing on your account. Regardless of suspension, you will be liable for all charges for Service under the Agreement, including monthly Service and usage charges, and other charges or purchases billed to your account, whether or not you reinstate Service. SmartAccess customers are only eligible for select rate plans. Smart Access activation fees are non-refundable unless you: (a) purchased the Phone and Service directly from a T-Mobile store, T-Mobile.com, 1-877-387-4324, or 1-800-T-MOBILE; and (b) cancel Service and return the Phone to the place of purchase in accordance with Sec. 5.

26. **Other Agreements or Warranties.** Other Services (such as T-Mobile HotSpot or Equipment Protection) or Products may come with separate written terms or conditions, and warranties that govern their use or purchase. Please see those other agreements or warranties for your rights and duties regarding their use.

# FlexPay Supplemental Terms and Conditions

Effective July 2007 until amended

These **FlexPay Supplemental Terms and Conditions** ("FlexPlay T&C's") are in addition to the T-Mobile Terms and Conditions you have received, and are part of your Agreement with T-Mobile. To the extent these FlexPlay T&C's conflict with the T-Mobile Terms and Conditions applicable to your Service or any Prepaid Refill terms and conditions, these FlexPlay T&C's will apply.

1. **FlexPay.** With FlexPay you pay in advance for your monthly rate plan services and features ("Monthly Services"). If you agreed to a one or two-year term contract, you are obligated to pay for Monthly Services for the Term of your contract. If you agreed to a month-to-month term, you are only obligated to pay for your first month of Monthly Services. For your current Amount Due, dial #BAL# or go to my.t-mobile.com. Your Monthly Services will become available after we receive and apply your payment (the time of day may vary; check my.t-mobile.com or #MIN# for availability). If you run out of a Monthly Services allotment, you will be unable to use that service for the remainder of that monthly service cycle unless you have sufficient funds in a FlexAccount to pay for them. A FlexAccount balance also will be needed to purchase other services not included in your Monthly Services (see below for details).

2. **FlexAccount/Prepaid Refills.** You can set up a FlexAccount by purchasing and depositing Prepaid Refill dollars. Please note that with FlexPay, different terms and rates apply to your use of Prepaid Refill dollars. You can use your FlexAccount to: (1) purchase services when you run out of your monthly allotments (such as Whenever Minutes or messages); (2) purchase other services that are not included in your Monthly Services (such as international dialing and roaming, downloads, messaging, 411 and data services); and (3) pay for your Monthly Services by transferring dollars from your FlexAccount to your Monthly Services account (account holder only). If you use any additional services, applicable charges will automatically be deducted from your FlexAccount (see rate plan information or t-mobile.com for current applicable rates for minutes, messages and other services and usage). To check your FlexAccount balance, dial #999# or go to my.t-mobile.com. Each line on a multi-line account may have a FlexAccount. You may transfer FlexAccount dollars to pay for your Monthly Services on the account associated with your FlexAccount. You cannot transfer funds among FlexAccounts, or use FlexAccount funds to pay for monthly service for other billing accounts.

3. **Refunds. All monthly charges paid in advance for each line of service are non-refundable, even if you have not used the service or service is cancelled during the Return Period.** If your account is cancelled, we will refund unused money in your FlexAccount, and any other amounts in your Monthly Services account that have not yet been applied toward your Monthly Services charges. If your account is cancelled during the Return Period, you also may be eligible for a handset refund if you meet the conditions of our Return Policy. **We may deduct amounts you owe us, such as an early termination fee, from any refund we may owe you.**

4. **Payment Reminder/Billing.** Prior to the start of each service cycle, you will receive a payment reminder showing the Amount Due for your Monthly Services. Your payment reminder will not contain detailed billing information. You may access bill details on our website at my.t-mobile.com (which requires you to provide a user name and password to log on.) my.t-mobile.com **may reflect more recent activity on your account, so your current Amount Due may differ from the amount stated on your payment reminder. Service Cycle.** Your first service month may start up to several days after your service is activated and you may have several additional days during that first service cycle in which to use your monthly allotments. **Billing.** For billing purposes, each minute of a call will be billed according to the time or day applicable to that minute (such as Nights and Weekends). **EasyPay.** Your Amount Due will include a **Control Charge of $4.99 per line per month if you are not enrolled in and using EasyPay** (an automatic monthly recurring payment service). EasyPay enrollment, changes or cancellation, may not take effect until at least the next service cycle after you contact us. The Control Charge may apply for at least one service cycle after you sign up for EasyPay. If your EasyPay payment cannot be processed for any reason, your account will be suspended and you will be required to pay the Amount Due and the Control Charge to reinstate your Monthly Services.

5. **Payments. Amount Due. If you do not pay the Amount Due in advance, your Monthly Services will not be available.** To receive your full Monthly Services allotment, you must pay the Amount Due by the date on your payment reminder. If you pay after the date on your payment reminder, the Amount Due and the Monthly Services allotment you receive will be prorated for the number of days remaining in your monthly service cycle. It may take up to one day after receipt and application of your payment to restart your Monthly Services. You can obtain your current Amount Due (prorated or otherwise) by dialing #BAL# or going to my.t-mobile.com. **Partial Payment.** If you underpay or partial pay, your Monthly Services will not be available until

Exhibit 2
Page 2-6

your partial payment is equal to or greater than the prorated charges for service for the remaining days in your service cycle. The Monthly Services you receive will be prorated based on the number of days remaining in that service cycle. **Payment in Last Five Days.** To start Monthly Services during the last five days of the service cycle, you must pay the prorated amount for those remaining days plus the total Amount Due for the following service cycle. If you do not pay that full amount, then your payment will be applied as a partial payment toward the Amount Due for next month's service cycle. **Extension of Term.** If you agreed to a one or two-year Term contract, your Term may be extended by the total number of days for which you have not paid for Monthly Services (e.g., if you only pay for prorated Monthly Services for the last 10 days of a 30 day service cycle your Term may be extended by 20 days.) **Overpayment.** We will apply any overpayment toward the Amount Due for the following service cycle when it becomes due. If the overpayment does not cover the total Amount Due for that cycle, it will be treated as a partial payment for that cycle, and your Monthly Services will be prorated (see Partial Payment above). **Multi-line accounts.** You will have one Amount Due for all lines on a multi-line account, and any payments will be applied to all lines and all Monthly Services. For example, if you have three lines on your account, you cannot pay for only one of the three lines, or just for certain Monthly Services. If you make a partial payment, services for all lines will be prorated, and the Amount Due will reflect the prorated charges for all lines.

6. **Account Changes.** You may be unable to make changes to your account during certain periods of your service cycle. **Voluntary Suspension.** If we allow you to voluntarily suspend your Monthly Services, we will not refund amounts paid in advance for those services, or credit any remaining unused allotments in your current service cycle. Upon suspension, your Monthly Services and FlexAccount will no longer be available for use. To maintain the voluntary suspension for the period permitted (at T-Mobile's discretion) and avoid cancellation, you must pay in advance a monthly access fee and the Control Charge (if you are not using Easy Pay) for each line. If you have a one or two-year Term contract and the Term has not expired, it may be extended for the period of your voluntary suspension.

7. **Service Cancellation. Month-To-Month Plan.** You can keep your account active by paying for Monthly Services, adding Prepaid Refill dollars to your FlexAccount, or by using your FlexAccount for services, at least once every 90 days. Otherwise, your account will be cancelled. **Contract Plan.** If you have a one or two-year contract Term, you must pay in advance for Monthly Services, each month, for the total number of months in your account. All lines on the account will be cancelled unless payment for Monthly Services is received and your Monthly Services (prorated or otherwise) are activated at least once every forty-five days after the due date listed in your payment reminder. This cancellation policy applies both during and after your contract Term. **A $200 per line early termination fee applies if service is cancelled during your one or two-year contract Term. All Plans: You agree that we may apply any balance in your FlexAccount to any amounts you owe us (including any early termination fees) at the time of service cancellation. Any remaining unused FlexAccount or other balance will be refunded to you according to T-Mobile's Terms and Conditions.**

T-Mobile.com: © 2002-08 T-Mobile USA, Inc.

# EXHIBIT 3

Return to T-Mobile.com

 

My T··Mobile·

Not your phone?    Tour My T-Mobile

Hello: MIKE MARTINET
760.644.7231
- View my profile   - Logout

[ SUPPORT FOR MY PHONE ]

[ ASK T-MOBILE ]   [ SEARCH ]

## BILL SUMMARY

**Account number:** 327898539

There is a portion of your balance now showing as past due. Please visit **Pay my bill** to make a payment to your account.

[ PAY NOW ]

- Use EasyPay to set up recurring payments
- Print/View complete bill

| | |
|---|---|
| **Mobile number:** | **(760) 644-7231** |
| **Amount due 02/15/08:** | $891.89 |
| **Payments received:** | $0.00 |
| **Additional charges and credits:** | ($282.23) |
| **Current Balance:** | $609.66 |

Current balance due may not reflect recently made payments.

Billing Period
Jan 20, 2008 (12/20/07 - 1/19/08)

[ SERVICE DETAILS ] [ SERVICE CHARGES ] [ BILL DETAILS ]

### Service Charges for (760) 644-7231

**Previous Balance and Payments**

| Item | Amount |
|---|---|
| Previous Balance | 473.19 |
| Payment Received On 1/15/08 | (72.00) |

**Monthly Service Charges**

| Item | Amount |
|---|---|
| Get More 1k w/N&W | 39.99 |
| Sidekick Unlimited | 19.99 |
| **Monthly Service Charges** | **59.98** |

**Adjustments to Bill**

| Item | Amount |
|---|---|
| Returned EQPT Shipping ADJ | (10.00) |
| **Adjustments to Bill** | **(10.00)** |

**Usage Charges**

| Item | Amount |
|---|---|
| PREMIUM SERVICES | 12.96 |
| **Usage Charges** | **12.96** |

**One Time Charges**

| Item | Amount |
|---|---|
| Late fee for invoice due 12/15/07 | 5.00 |
| One time charge for Equipment Sales Tax | 28.44 |
| One time charge for Equipment Shipping/Handling | 15.00 |
| One time charge for Equipment purchase charge | 349.99 |
| One time charge for Upgrade Fee | 18.00 |
| Other Charges (Non-Communications Related) | |
| Equipment Protect by Asurion | 5.99 |
| **One Time Charge** | **416.43** |

**Other Charges (Non-Communications Related)**

| Item | Amount |
|---|---|

### RESOURCES

Minutes used as of
01/31/2008 02:15:10 PM

WHENEVER      1000 MINUTES/MONTH

- See minutes used details

- View your current plan

Minutes used information is also available by dialing #MIN#

**Paperless Billing**

- Sign up today for Paperless Billing and receive e-mail reminders when your bill is ready

### NOW AVAILABLE





### FREQUENTLY ASKED QUESTIONS

How do I read my bill?

How do I update my billing address?

How can I pay my bill?

Additional help >

Exhibit 3
Page 3-1

| Equipment Protect by Asurion | 5.99 |
|---|---|
| **Other Charges (Non-Communications Related)** | **5.99** |

**Taxes, Fees and Surcharges**

| Item | Amount |
|---|---|
| **Government Fees and Taxes** | |
| CA Relay Service and Communications Device Fund | 0.08 |
| California High Cost Fund - A (CHCF-A) | 0.05 |
| California High Cost Fund - B (CHCF-B) | 0.20 |
| California Teleconnect Fund | 0.05 |
| Emergency Telephone Users Surcharge Tax (911) | 0.20 |
| Universal Lifeline Telephone Service Surcharge | 0.47 |
| City Utility Users Tax | 2.66 |
| **Other Fees & Government-Related Obligations\*\*** | |
| Federal Universal Service Fund | 0.70 |
| Regulatory Fee | 0.07 |
| Regulatory Programs Fee\* | 0.86 |
| **Taxes, Fees and Surcharges** | **5.34** |
| **Total Charges** | **891.89** |

\*\*These charges relate to your service. They may be imposed on us and passed through to you pursuant to your contract.
\*Fee we collect and retain to help cover our costs related to funding and complying with government mandates, programs and obligations.

🖶 Print this page

🖶 Print/View complete bill

Current balance is intended to reflect the balance that carries over from your last bill and any payment activity that has been recorded in our system. Payments that have not yet posted will not appear.

Your printed T-Mobile bill will be mailed to the billing address in our records. Customers who have signed up for Paperless Billing will no longer receive a printed bill. You may print a copy of your online bill by going to the Billing section and selecting Print/View complete bill at the bottom of the Service details section.

Store Locator | Support | Contact Us | Coverage | Refer a Friend

T-Mobile.com : ©2002-2007 T-Mobile USA, Inc. | Terms of Use | Terms & Conditions | Return Policy | Privacy Policy

Exhibit 3
Page 3-2

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 148192    — SH
* * C O P Y * *
February 28, 2008
15:57:28**

**Civ Fil Non-Pris**
USAO #.: 08CV0381
Judge..: JANIS L. SAMMARTINO
Amount.:                    $350.00 CK
Check#.: BC0038411


**Total—> $350.00**


FROM: MARTINET V. T MOBILE

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

PHILIP MARTINET, individually and on behalf of all others similarly situated

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Joseph G. Dicks, Dicks & Workman, APC, 750 B Street, Suite 2720, San Diego, CA  92101, (619) 685-6800

## DEFENDANTS

T-MOBILE USA, INC., a Delaware corporation

FILED

08 FEB 27

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

'08 CV 381      JLS (LSP)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court |
| ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation |
| ☐ 7 Appeal to District Judge from Magistrate Judgment | | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332(d)

Brief description of cause:
Diversity jurisdiction for breach of contract, unjust enrichment, and violations of consumer protection

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                DOCKET NUMBER

DATE   02/28/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 14892   AMOUNT  $350   APPLYING IFP   JUDGE   MAG. JUDGE

2/28/08